UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SOLON PAUL,

                                  Plaintiff,

                                                                                                      <u>DECISION AND ORDER</u>

                                                                                                      03-CV-6583L

                  v.

THE CITY OF ROCHESTER,
CORY BLANK, ORLEANS COUNTY SHERIFF DEPUTY,
TON DRENNAN, ORLEANS COUNTY SHERIFF DEPUTY,

                                  Defendants.
_____

## INTRODUCTION

     Plaintiff Solon Paul ("plaintiff") filed this action against the City of Rochester and two Orleans County Sheriff Department deputies, Cory Black[1] and Tom Drennan, alleging violations of 42 U.S.C. § 1983 and New York state common law. The case arises out of the execution of a court-ordered search warrant that took place at 381 Lyell Avenue on December 21, 2001. Plaintiff alleges that defendants violated his Fourth Amendment rights by using unreasonable force against him while being detained during the search.

     Before the Court are defendants' motions for summary judgment brought pursuant to FED. R. CIV. P. 56 (Dkts. ##23, 26). Argument on the motions was held July 18, 2006, at which plaintiff's

---

[1] Defendant was named incorrectly in plaintiff's complaint as Cory Blank.

counsel conceded that dismissal on the merits of several of the claims was warranted.[2]  This Decision and Order addresses the remaining claims asserted by plaintiff, which are: (1) a common law battery[3] claim against the City, based on *respondeat superior* for the intentional tort of one of its officers; and (2) a 42 U.S.C. § 1983 claim against defendants Black and Drennan based on the alleged unreasonable use of force in violation of the Fourth Amendment.

Defendants argue that summary judgment is warranted because the alleged use of force during the execution of the search warrant was objectively reasonable under the Fourth Amendment. Additionally, defendants Black and Drennan argue that summary judgment is warranted because plaintiff can produce no evidence that they were personally involved in the alleged constitutional violation, and because they are entitled to qualified immunity.

For the reasons that follow, defendants' motions are granted, and plaintiff's amended complaint is dismissed in its entirety.

---

[2] Plaintiff's amended complaint asserted the following four claims: (1) a common law assault claim against the City; (2) a common law false arrest claim against the City; (3) a common law wrongful imprisonment claim against the City; and (4) a 42 U.S.C. § 1983 claim against defendants Black and Drennan based on the Fourth Amendment for assault, false arrest, and false imprisonment.  At the hearing, as well as in his motion papers (*see* Dkt. #34, p.2), plaintiff conceded that the second and third claims asserted against the City should be dismissed in their entirety, as well as so much of the fourth claim against defendants Black and Drennan based on false arrest and wrongful imprisonment.

[3] Plaintiff styled this claim in his amended complaint as one alleging common law "assault." It is clear, however, based on his allegations and the evidence before the Court, that he states a claim for common law "battery" because he alleges an unwanted physical touching by an officer, not that he was placed in fear of imminent physical harm. *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993). The Court, therefore, construes plaintiff's claim as one asserting common law battery.

## FACTUAL BACKGROUND

The salient facts are not disputed. 381 Lyell Avenue was an auto service and storage garage that became the focus of a drug investigation by the Orleans County Sheriff's Department. The warrant authorized the Rochester Police Department ("RPD"), who assisted in the investigation, to search for evidence of marijuana trafficking.

Plaintiff, an innocent bystander, was at the garage to pick up car parts when the warrant was executed. Several officers from the RPD, accompanied by Black and Drennan, executed the warrant shortly after a suspect in the drug investigation ran into the building with a gun. Defendants, dressed in protective gear and face masks, entered the building and ordered all the occupants onto the ground. Plaintiff complied, and he and the other occupants were placed in handcuffs and made to lay face down on the ground for approximately 30 to 45 minutes while officers searched the garage and arrested the suspect. Plaintiff was released within an hour from the time police first entered the garage and no charges were placed against him.

Plaintiff does not dispute that he was lawfully detained during the search. He claims, however, that an unknown officer used unreasonable force to effectuate the detention. Specifically, plaintiff claims that while laying on the ground as ordered, he raised his head and moved his leg. Plaintiff claims that as the result of his movement, one of the officers ordered him to "get down," then stepped on plaintiff's ankle, knee, and back. He also claims that the same officer used a foot to push plaintiff's head into the floor. Plaintiff cannot identify which officer allegedly used force on him because the officer's face was hidden by a mask.

**DISCUSSION**

**I.    Summary Judgment Standards**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When considering a motion for summary judgment, courts must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**II.    The Use of Force Claims**

Both plaintiff's battery claim against the City and his § 1983 claim against Black and Drennan arise under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard ... ."). The pertinent inquiry is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotations omitted).

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Rather, courts must balance

"'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Graham*, 490 U.S. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). This "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. In addition, defendants' conduct "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Importantly, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

In the instant case, I find as a matter of law that plaintiff has failed to raise a question of fact regarding whether defendants violated his Fourth Amendment rights. Construing the evidence in a light most favorable to him, plaintiff failed to show that defendants used objectively unreasonable force during the detention.

Plaintiff was an innocent man who was caught up in the lawful execution of a search warrant for drugs. Upon entry of the building, police ordered the occupants to lay on their stomachs. Plaintiff complied. He was then handcuffed and made to lay face down on the ground while police secured the building and apprehended an armed suspect. While handcuffed and laying on the floor, plaintiff raised his head and moved his leg. By plaintiff's own testimony, his movements prompted an officer to step on plaintiff's knee and back.[4] Plaintiff also alleges that the same officer used his

---

[4] At his deposition, plaintiff alleged, "They said, 'Get down,' because I was trying to move my leg. That's why they stepped on my leg, they thought I was trying to move away."
(continued...)

foot to push plaintiff's head onto the floor.[5] After the search of the premises was complete, plaintiff was allowed to sit in a chair and his handcuffs were changed. He was detained for another 25 to 30 minutes while he was interviewed by officers and photographed. He was then released. According to plaintiff, he sustained scrapes on his forehead and/or cheek, an injury to his knee, and his glasses were broken during the incident.[6]

The facts alleged by plaintiff depict police conduct that can only be described as "objectively reasonable." It is well-settled that police have the authority to detain occupants of a building while executing a warrant for contraband. *Michigan v. Summers*, 452 U.S. 692, 704-705 (1981). Moreover, police are authorized to use some degree of physical coercion to "effectuate the detention." *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005); *Graham*, 490 U.S. at 396 ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

In *Michigan v. Summers*, 452 U.S. at 702-703, the Supreme Court recognized that the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if

---

[4] (...continued)
(Dkt. #28, at p. 37).

[5] Dkt. #28, at pp. 93-94.

[6] There appears to be a question regarding the exact nature of plaintiff's injuries and the treatment he sought for those injuries. Although plaintiff alleged at his deposition that he sought treatment at Strong Memorial Hospital three days after the incident, Strong has no record that plaintiff ever was treated there. Plaintiff did file records from a treating physician indicating that he has an impairment of the knee, but the physician did not give an opinion regarding the cause of that injury. Because summary judgment is warranted for the reasons stated herein, these questions are immaterial.

the officers routinely exercise unquestioned command of the situation." Plaintiff's sudden movements and failure to remain flat on the ground during the search for drugs and an armed suspect is precisely the type of prelude to a detainee's dangerous act that the Court contemplated in *Summers*. It is the type of action one would expect to result in the use of force.

Even assuming that all of plaintiff's factual allegations are true, I find as a matter of law that no reasonable juror could conclude that the officer's conduct here violated plaintiff's Fourth Amendment rights. Under the circumstances, it was objectively reasonable for the officer to use the level of force employed when plaintiff disobeyed his order to remain flat on the ground. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir.2004) ("Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on [a Fourth Amendment] excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." (citing *O'Bert v. Vargo,* 331 F.3d 29, 37 (2d Cir. 2003)).  This is not a case where "a reasonable jury could also find that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances . . . ." *Amnesty America*, 361 F.3d at 124.  The facts do not constitute a violation of plaintiff's Fourth Amendment rights, and defendants are entitled to summary judgment. *See Muehler*, 544 U.S. at 98-99 (where the Supreme Court found that a SWAT team's use of force to execute a search warrant gave the officers maximum protection from anticipated risks in a dangerous situation).

**III.    Personal Involvement of Defendants Black and Drennan**

Defendants Black and Drennan are entitled to summary judgment for the additional reason that plaintiff cannot show that either was personally involved in the alleged constitutional violation. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). At the argument on the motion, plaintiff's counsel acknowledged that plaintiff's inability to identify which specific officer allegedly assaulted him posed a special problem. Nevertheless, he argued that liability should be apportioned among all the defendants. There is no authority for such an apportionment in this case.

"Plaintiff is correct that, in certain situations, the burden must shift to each defendant to disprove his or her involvement." *Universal Calvary Church v. City of New York*, 99 Civ. 4606, 2000 U.S. Dist. LEXIS 15153, *63 (S.D.N.Y.2000). To shift this burden, however, plaintiff must demonstrate first that *each* of the defendants acted tortiously. *Id.* at 64 (citing *Rutherford v. Berkeley*, 780 F.2d 1444, 1448 (9th Cir.1986);*Grandstaff v. City of Borger*, 767 F.2d 161, 168 (5th Cir.1985);  Restatement (Second) of Torts § 433B cmt. g (1965)).

Here, however, plaintiff has made no such demonstration. In fact, he claims that only *one officer* used unreasonable force, but he cannot identify which officer that was. Plaintiff cannot even identify whether the officer was from the RPD or from Orleans County.

Defendants Black and Drennan are entitled, therefore, to summary judgment because plaintiff has failed to prove an essential element of his § 1983 claim. *See Universal Calvary Church*, 2005 U.S. Dist. LEXIS at *67 (summary judgment granted where plaintiffs were unable to identify their assailants among multiple defendants, and where there was no showing that all of the defendants engaged in tortious conduct).

**IV.    Qualified Immunity**

In any event, even if questions of fact remained regarding the alleged Fourth Amendment violation, defendants Black and Drennan[7] would be entitled to summary judgment based on qualified immunity.

In *Lennon v. Miller*, 66 F.3d 416 (2d Cir.1995), the Second Circuit explained that:

> [A] defendant is entitled to summary judgment on qualified immunity grounds when 'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Id.* at 420 (second alteration in original) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987)). "Qualified immunity operates … to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citation omitted).

Here, no clearly established rule prohibited an officer from using his foot to force plaintiff to comply with an order to remain on the ground after plaintiff moved his head and leg while being detained. It would not "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir.2005) (defendant officer was entitled to qualified immunity because it had not been clearly established that tackling plaintiff under the circumstances constituted excessive force); *Soares v.*

---

[7] The City did not raise qualified immunity as a basis for summary judgment.

*Connecticut*, 8 F.3d 917 (2d Cir.1993) (defendants entitled to qualified immunity where they arrested and handcuffed plaintiff, resulting in bruising and temporary indentations on his wrist).

Even if the right to be free from the level of force employed in this case had been clearly established, I conclude that any violation of that right was an objectively reasonable mistake. *Saucier*, 533 U.S. at 205 ("if the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.").

Given the circumstances of plaintiff's detention (police executing a search warrant for drugs in a building in which an armed suspect was trying to evade arrest, coupled with plaintiff's failure to obey police commands to stay on the ground), the alleged conduct of the officer was objectively reasonable.  A rational jury could only conclude that other officers of reasonable competence would have made the same choices in similar circumstances. *See Lennon*, 66 F.3d at 426 (where a police officer forcibly removed a woman from a car by putting his arm around her neck, shoulder, arm, and hand, then "yanked" her hand off the ignition and "yanked" her out of the car, the Court granted the officer qualified immunity because "no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice"); *Klendshoj v. City of Buffalo Police Dep't*, No. 97-CV-884A, 1998 U.S. Dist. LEXIS 21970 (W.D.N.Y. Dec. 17, 1998) (defendants granted qualified immunity where plaintiff grabbed her driver's license away from the police officer writing her a summons and then claimed that during her subsequent arrest one police officer twisted her arm and another pushed her at the police station, causing "pain, shock, humiliation," and other unspecified "physical, mental, and personal damage"); *see also Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.2000) (qualified immunity granted where "Appellee claim[ed] Appellant grabbed him from behind by the shoulder and wrist, threw him against a van three or four

feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him," and where Appellee alleged "he suffered bruising to his forehead, chest, and wrists, although he admits the bruises disappeared quickly and he did not seek medical treatment").[8]

## CONCLUSION

Cory Black and Tom Drennan's motion for summary judgment (Dkt. #23) is granted.

The City of Rochester's motion for summary judgment (Dkt. #26) is granted.

Plaintiff's amended complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 21, 2006.

---

[8] In contrast, cases where summary judgment was denied based on qualified immunity tend to involve defendants who the Supreme Court noted were either "plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations omitted). *See Posr v. Doherty*, 944 F.2d 91 (2d Cir.1991) (where the unprovoked police beating of a homeless man marching in a parade was videotaped by bystanders); *see also Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir.2000) (where officers released a police dog on a suspect who already complied with their orders to lay on the ground); *Ingram v. City of Columbus*, 185 F.3d 579 (6th Cir.1999) (where plainclothes police made a warrantless and unannounced entry into a home while pursuing a drug dealer, subsequently handcuffing, injuring, and swearing at the innocent residents therein); *Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir.1998) (where police handcuffed a U.S. Customs agent whom they knew to be innocent of wrongdoing, tightened the handcuffs to degree that it caused severe pain, and refused to either loosen the restraints or allow the agent access to a bathroom for four and one/half hours).